# STATE OF MICHIGAN

# COURT OF APPEALS

SUSANNAH THOMPSON,

Plaintiff-Appellant,

v

SEAN ROBERT POWELL and FRANK
KENNETH BOLLINGER,

Defendants-Appellees,

and

AUTO CLUB OF MICHIGAN and AAA OF
MICHIGAN,

Defendants.

UNPUBLISHED
December 27, 2018

No. 341433
Wayne Circuit Court
LC No. 16-013213-NI

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

In this action involving a claim of automobile negligence and the ability to recover in tort under the Michigan no-fault insurance act, plaintiff appeals as of right the trial court's order granting summary disposition in favor of individual defendants Sean Powell and Frank Bollinger (defendants), pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of a motor vehicle accident that occurred in September 2014, when a vehicle driven by plaintiff and a vehicle driven by Powell collided. Plaintiff commenced the instant action in October 2016. She alleged in her first amended complaint that the accident was the result of Powell's negligence and that Bollinger owned the vehicle that Powell was driving. She further alleged, as relevant to this appeal, that she suffered a serious impairment of body function and lost the ability to enjoy the normal pleasures of life due to neck and back pain that she experienced as a result of the accident.

Defendants subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's deposition testimony, her medical records, and the testimony of her

-1-

treating physicians showed that she did not have evidentiary support for her claim that she suffered an objectively manifested impairment of an important body function that affected her ability to lead a normal life. In response, plaintiff argued that multiple doctors agreed that she suffered cervical and lumbar sprains and strains in the accident but only disagreed about how quickly she should have recovered.

Following a hearing at which the trial court heard oral argument, the trial court granted defendants' motion for summary disposition. The trial court concluded that the notes in plaintiff's medical records referring to her back and neck pain were based only on plaintiff's complaints and did not include any objective testing results to verify those complaints. The trial court also concluded that plaintiff had not established that her ability to lead her normal life had been affected. This appeal ensued.

## II. STANDARD OF REVIEW

This Court reviews a trial court's summary disposition decision de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998).

> In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4).

> In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (some citations omitted).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Further, "it is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 480; 776 NW2d 398 (2009). A court also may not "make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper." *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) (quotation marks and citation

omitted). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Innovative Adult Foster Care*, 285 Mich App at 476.

## III. ANALYSIS

Plaintiff argues on appeal that because she established a genuine issue of material fact regarding the existence of a serious impairment of body function, the trial court erred by granting summary disposition in defendants' favor.

Although the Michigan no-fault act limits tort liability, *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018), a person still remains "subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered . . . *serious impairment of body function* . . . ." MCL 500.3135(1) (emphasis added). The phrase "serious impairment of body function" is statutorily defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). In *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010), our Supreme Court held that establishing a serious impairment of body function required showing "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." In applying this test,

> the issue of whether a serious impairment of body function has been incurred is a question of law to be decided by the court only if (1) "[t]here is no factual dispute concerning the nature and extent of the person's injuries" or (2) "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function . . . ." MCL 500.3135(2)(a). Accordingly, in *McCormick*, 487 Mich at 215, our Supreme Court instructed courts applying MCL 500.3135 to begin by determining "whether there is a factual dispute regarding the nature and the extent of the person's injuries and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met." When there is a genuine issue of material fact regarding the nature and extent of a person's injuries, the threshold question of whether there was a serious impairment of body function is for the jury and may not be decided as a matter of law. *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444; 810 NW2d 88 (2011). [*Patrick*, 322 Mich App at 607-608.]

In this case, only the first and third prongs of the *McCormick* test are at issue. Neither party disputes that the neck and spine constitute "important" body functions having "great value, significance, or consequence." See *McCormick*, 487 Mich at 199.

Turning to the first prong, the *McCormick* Court held that an objectively manifested impairment is "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function," i.e., one that is "observable or perceivable from actual symptoms or conditions." *Id*. at 196. The mere existence of pain and suffering, standing alone, does not satisfy the serious impairment threshold: there must be evidence showing "a physical basis for [plaintiff's] subjective

complaints of pain and suffering." *Id*. at 197-198 (quotation marks and citation omitted). This showing "generally requires medical testimony." *Id*. at 198. "[W]hen considering an 'impairment,' the focus 'is not on the injuries themselves, but how the injuries affected a particular body function.' " *Id*. at 197 (citation omitted).

In this case, plaintiff's deposition testimony and her medical records disclosed that she visited Dr. Neelum Gupta shortly after the accident and complained of experiencing arm, neck, and back pain since the accident. Plaintiff testified that she did not have a history of neck and back pain before the accident, and she further testified that she experienced neck and back pain immediately after the accident. She rated the neck and back pain that she felt after the accident as an "11" on a scale of 1 to 10. Plaintiff testified that she was two months pregnant at the time of the accident and that she was taken from the scene of the accident to the hospital by ambulance. At the hospital, according to plaintiff, an x-ray was done on her arm, an ultrasound was conducted to check the fetus, and "they couldn't do the x-ray on my back." Plaintiff further testified that her treating medical professionals only wanted to treat her neck strain with physical therapy and a heating pad due to her pregnancy. Plaintiff subsequently gave birth to her child, and there were no complications attributable to the accident. She testified that she was prescribed pain pills to take for her back pain after her pregnancy ended as a result of the birth. Plaintiff also received an MRI after her child was born. Medical records authored by Dr. Ivan Landan and Dr. Rocky Saenz indicate that plaintiff's MRI showed a straightening of the normal curvature and alignment of her cervical spine and that plaintiff had "sustained musculoskeletal injuries with strains and sprains to her spine." The MRI evidence establishes a physical basis for plaintiff's complaints of pain and thus provides support for the existence of an impairment that is observable and perceivable to someone other than plaintiff as is necessary to satisfy the first prong of the *McCormick* test. *Id*. at 196-198.

However, defendants submitted contrary evidence in the form of a report authored by Dr. Adeel Khalid. Khalid reviewed plaintiff's MRI examinations in 2017, approximately two years after they were originally completed. Khalid opined that the vertebral bodies, stature, alignment, and marrow signal for plaintiff's cervical spine, thoracic spine, and lumbar spine were normal. He further opined that the straightening of the cervical lordosis was "slightly related to the position of the neck within the MRI coil for MRI examination." Khalid did not find any invertebral disc herniation. However, it would be improper at this juncture in the proceedings to adjudicate whether plaintiff suffered a serious impairment of an important bodily function as it is clear there was evidence from which reasonable minds could reach different conclusions. This conclusion rests on the differing analyses of the medical records provided by Landan, Saenz and Khalid, which establish that a genuine issue of material fact exists regarding whether there was an objectively manifested impairment because *West*, 469 Mich at 183.

Turning next to the third *McCormick* prong, our Supreme Court held as follows:

[T]he common understanding of to "affect the person's ability to lead his or her normal life" is to have an influence on some of the person's capacity to live in his or her normal manner of living. By modifying "normal life" with "his or her," the Legislature indicated that this requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis. Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life

-4-

necessarily requires a comparison of the plaintiff's life before and after the incident. [*McCormick*, 487 Mich at 202.]

"[T]he statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id*. Additionally, "the plain language of the statute only requires that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected," and thus, "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 202-203. Finally, "the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *Id*. at 203.

In this case, there was evidence that plaintiff's ability to lead her normal life was affected with respect to her capacity to take care of her personal grooming, to perform household tasks that included bending and lifting, and to engage in social activities. Plaintiff testified that after the accident, her husband had to help her with personal grooming, such as showering and getting dressed, for more than a year. According to plaintiff, she required her husband's help for these tasks due to both her injuries from the accident and her recovery from the Caesarean section she had when her child was born. At the time of her deposition, her husband still was helping her to put her arm into her shirts, to put on her pants, and to put on her shoes because of her injuries from the accident. Plaintiff also testified that before the accident, she had performed household tasks, such as cleaning, cooking, doing laundry, taking out the trash, and grocery shopping. Before the accident, she would clean the house twice a week and cook two or three times a week.

Plaintiff testified that since the accident, her husband had taken over responsibility for cleaning the house, cooking, and taking out the trash because she did not like to bend over or "do . . . heavy stuff." Plaintiff further testified that she could not lift her child because of her neck and back; her husband had to lift the child, but plaintiff would hold the child on her lap. Additionally, plaintiff testified that before the accident, she enjoyed going to the mall, going to visit her friends and neighbors, and visiting her family members in Maryland. However, plaintiff testified that she no longer did anything for fun, that she no longer walked to visit her neighbors since the accident because she could not walk for very long due to the pain in her back and neck, and that she had not gone back to Maryland because it was too uncomfortable to sit for so long on an airplane. Plaintiff also submitted patient limitations certificates completed by Dr. Charise Valentine, indicating that Valentine had disabled plaintiff from performing certain tasks during the time period from November 2, 2015 to January 3, 2016, based on plaintiff's cervical and lumbar strain and sprain stemming from the motor vehicle accident. Specifically, Valentine indicated that plaintiff's injuries prevented her from performing housework; driving, and taking care of certain personal needs such as dressing, bathing, and cooking. Thus, plaintiff submitted evidence to support the conclusion that at least some of her ability to live in her normal manner of living had been affected for at least some amount of time, as required under *McCormick. Id*. at 202-203.

Defendants, in arguing that we should affirm the trial court's order, essentially take issue with the strength of plaintiff's evidence. However, resolution of such an argument is improper on summary disposition. *Innovative Adult Foster Care*, 285 Mich App at 480. Defendants also appear to challenge the third *McCormick* prong by focusing on other areas of plaintiff's life that

apparently were not affected by her injuries, such as her ability to bear children. But the relevant standard only considers whether "a person's general ability to lead his or her normal life has been *affected*." *McCormick*, 487 Mich at 202. In other words, plaintiff is not required to show that her ability to lead her normal life was completely destroyed in every aspect, or even that her ability to lead all aspects of her normal life was affected. See *id*. at 202 ("[C]ourts should consider not only whether the impairment has led the person to completely cease *a pre-incident activity or lifestyle element*, but also whether, although a person is able to lead his or her pre-incident normal life, the person's *general ability* to do so was nonetheless affected.") (emphasis added); see also *id*. at 201 (explaining that the statute did not require a demonstration that an injured person's *entire* ability to live his or her normal life had been affected because "a person's 'whole' ability to live his or her normal life is surely not affected short of complete physical and mental incapacitation, which is accounted for in a different statutory threshold: death").[1]

In conclusion, because there was conflicting evidence on whether plaintiff satisfied the *McCormick* test for demonstrating that she incurred a serious impairment of body function, the trial court erred by granting summary disposition. *Lysogorski*, 256 Mich App at 299. A factual dispute concerning the nature and extent of plaintiff's injuries exists, making the issue whether plaintiff suffered a serious impairment of body function a question for the jury rather than one to be decided by the trial court as a matter of law. MCL 500.3135(2)(a); *Patrick*, 322 Mich App at 607-608. We therefore reverse the trial court's order.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff having prevailed is entitled to costs. MCR 7.219(A).


/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

[1] MCL 500.3135(1) provides that a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered *death*, serious impairment of body function, or permanent serious disfigurement." (Emphasis added.)