CHOUMAN v HOME OWNERS INSURANCE COMPANY

Docket No. 295491. Submitted July 6, 2011, at Detroit. Decided August 2, 2011, at 9:00 a.m.

Abir Chouman and her husband, Abdul Ajami, brought an action against Mariam and Hussein Hamadi in the Wayne Circuit Court after Chouman was injured in an automobile accident when Mariam rear-ended her. Plaintiffs subsequently added their no-fault insurer, Home Owners Insurance Company, as a defendant. Plaintiffs settled with the Hamadis, and Home Owners approved the settlement in its capacity as subrogee, but plaintiffs' case against Home Owners for underinsured motorist benefits proceeded to trial. Following the close of proofs, the court, John H. Gillis, Jr., J., granted plaintiffs' motion for a directed verdict, finding that Chouman had sustained a serious impairment of a body function. The jury then found that plaintiffs were entitled to $50,000 in underinsured motorist benefits from Home Owners. The court also awarded case evaluation sanctions to plaintiffs. Home Owners appealed.

The Court of Appeals *held*:

1. MRE 408 prohibits the introduction of evidence of compromise, offers to compromise, or compromise negotiations in order to prove liability for or the invalidity of the claim or its amount. MRE 409 prohibits the introduction of evidence of offering or promising to pay medical expenses in order to prove a party's liability for the injury. The evidence in this case established that Chouman received extensive medical treatment as long as Home Owners continued to pay first-party personal injury protection (PIP) no-fault benefits to plaintiffs, but Chouman essentially discontinued medical treatment when the company terminated those payments. Neither MRE 408 nor MRE 409 applied to the evidence of the company's payment of PIP benefits. Plaintiffs were entitled to present evidence that Chouman stopped receiving medical treatment, not because she no longer considered it necessary, but because plaintiffs were no longer receiving PIP benefits. However, the identity of the payor of those benefits was not relevant to any proper purpose and could not be introduced on remand.

2. The bar on the admission of evidence of compromise applies to settlements by parties to a suit with nonparties, at least to the extent of using the settlement as proof of liability of the settling party. Home Owners was not a party to plaintiffs' settlement with the Hamadis and was involved only to the extent of giving its approval pursuant to plaintiffs' insurance policy. The company's consent was not itself a compromise of a dispute, and the evidence was not barred by the rule against the admissibility of evidence of compromise. However, the evidence was, nonetheless, inadmissible because its probative value was substantially outweighed by its prejudicial effect.

3. Under the no-fault insurance act, to show a serious impairment of body function, the evidence must establish (1) an objectively manifested impairment of a body function (2) that is significant or important to the specific injured person and (3) affects that person's general ability to lead his or her particular normal life. In this case, an orthopedic surgeon testified that Chouman had sustained a herniated disk and a pinched nerve in her spine, and he continued to treat her for pain. He opined that Chouman was disabled from her work as a daycare school teacher. Home Owners presented the testimony of a physician specializing in rehabilitation, and she testified that Chouman had a herniated disk, but disagreed that Chouman continued to suffer from the condition or its symptoms, and opined that she was not restricted from her preaccident activities. The physicians disagreed regarding whether more recent tests had shown an improvement in Chouman's disk herniation. Although there was objectively manifested evidence of the spine injury, factual issues existed regarding whether the objectively manifested abnormailities in Chouman's spine and nerve continued to be impairments. Accordingly, the trial court erred by granting a directed verdict on the issue of whether Chouman had suffered a serious impairment of a body function.

Award of case evaluation sanctions vacated; judgment for plaintiff reversed and case remanded.

EVIDENCE — SETTLEMENTS — NONPARTIES — APPROVAL BY SUBROGEE.

The bar on the admission of evidence of compromise applies to settlements by parties to a suit with nonparties, at least to the extent of using the settlement as proof of liability of the settling party; however, an insurance company's approval, as subrogee, of a settlement between its insured and a third party is not itself

a compromise of a dispute and is not barred by the rule against the admissibility of evidence of compromise; nonetheless, such evidence may be barred if its probative value is substantially outweighed by its prejudicial effect (MRE 408).

*Giarmarco, Mullins & Horton, P.C.* (by *Larry W. Bennett* and *Geoffrey S. Wagner*), and *Gary R. Blumberg* for Abir Chouman and Abdul Ajami.

*Anselmi & Mierzejewski, P.C.* (by *Kurt A. Anselmi* and *Mark D. Sowle*), for Home Owners Insurance Company.

Before: MURRAY, P.J., and FITZGERALD and RONAYNE KRAUSE, JJ.

PER CURIAM. Defendant Home Owners Insurance Company appeals by right a judgment entered in favor of plaintiffs, Abir Chouman and Abdul Aziz Ajami. This case arises out of an automobile accident in which Chouman was injured when Mariam Hamadi rear-ended her. Ajami is Chouman's husband, and defendant is their no-fault insurer. Hamadi was the original named defendant in this matter, but, as will be discussed, she is no longer a party. Defendant argues that the trial court erroneously admitted certain testimonial evidence, erroneously granted a directed verdict in plaintiffs' favor on the issue of whether Chouman sustained a serious impairment of body function, and erroneously awarded case evaluation sanctions in excess of plaintiffs' policy limits of liability. We vacate in part, reverse in part, and remand.

Defendant argues that the trial court erroneously admitted two pieces of testimonial evidence. The trial court's decision whether to admit evidence is reviewed

for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *Barnett v Hidalgo*, 478 Mich 151, 158-159; 732 NW2d 472 (2007).

The first piece of testimonial evidence to which defendant objects is that defendant initially paid first-party personal injury protection (PIP) no-fault benefits to plaintiffs, but eventually terminated those payments. The second is that defendant consented to plaintiffs settling their direct claim against Hamadi and Hamadi's insurer, AAA, for Hamadi's policy limits. Plaintiffs' present claim against defendant is for underinsured motorist (UIM) benefits in the amount of the difference between plaintiffs' policy limits and Hamadi's policy limits. Defendant argues that the above evidence was irrelevant, unduly prejudicial, and legally inadmissible under MRE 408 and MRE 409.

MRE 408 and MRE 409 are clearly inapplicable to the evidence of defendant's payment of PIP benefits. MRE 408 prohibits evidence of compromise, offers to compromise, or compromise negotiations in order "to prove liability for or invalidity of the claim or its amount." See also *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 620-621; 792 NW2d 344 (2010). The purpose of the rule is to encourage parties to compromise. *Id.* at 621. MRE 409 prohibits evidence of "offering or promising to pay" medical expenses in order to "prove [a party's] liability for the injury." Neither rule prohibits admission of the same evidence for another purpose.

Chouman's injuries were disputed. Significantly, she received extensive medical treatment while defendant was paying her medical bills, but she mostly stopped receiving medical treatment thereafter. It was critical

for plaintiffs to explain *why* Chouman discontinued much of her medical treatment, in light of a possible argument that Chouman had discontinued treatment because she no longer considered it necessary. This evidence was highly and directly relevant to the underlying question of whether Chouman suffered a serious impairment of body function because of the accident. Under the circumstances it was not unduly prejudicial and not admitted for a purpose contrary to either MRE 408 or MRE 409. The trial court did not commit legal error or an abuse of discretion in admitting it. However, the identity of the payor of those benefits is not relevant to any proper purpose. Therefore, on remand plaintiffs are entitled to fully explain why Chouman discontinued medical treatments, but they may not introduce evidence that it was defendant who had previously been paying.

The evidence of defendant's consent to plaintiffs' settlement with Hamadi is, in contrast, a difficult question. Notwithstanding the lack of any explicit language precisely on point, MRE 408 has been found to apply to settlements by parties to a suit with nonparties, at least to the extent of using the settlement as proof of liability of the settling party. *Windemuller Electric Co v Blodgett Mem Med Ctr*, 130 Mich App 17, 20-23; 343 NW2d 223 (1983). And properly so, because not only are voluntary and freely-negotiated compromises encouraged, settlements may be motivated by a great many possible considerations unrelated to the substantive merits of a claim. This exclusionary rule historically only applied in the context of actual disputes regarding liability between the parties, *Ogden v George F Alger Co*, 353 Mich 402, 406-407; 91 NW2d 288 (1958), and for the purpose of making peace between them rather than for any other purpose. *Manistee Nat'l Bank v Seymour*, 64 Mich 59, 69-70; 31 NW 140 (1887).

Defendant was not a party to the settlement or any part of the settlement process and was involved only to the extent of giving its approval pursuant to plaintiffs' policy, which explicitly excluded UIM coverage "to any person who settles a **bodily injury** claim without [defendant's] written consent." On the other hand, such consent clauses are obviously relevant to insurers' subrogation rights, making defendant's interest greater than some kind of bystander. Ultimately, it does not appear that defendant's consent to the settlement was, itself, a compromise of a dispute defendant had with any party or nonparty. We therefore conclude that its admission into evidence is not barred by MRE 408.

Nevertheless, the policy concerns underlying MRE 408 remain applicable: as defendant points out, its consent to the compromise may have been the result of the same wide range of possible motivations that might drive an actual settlement.[1] Additionally, the contract standard related to defendant's approval of the Hamadi settlement differs completely from the substantial impairment standard that plaintiff was required to prove in the case before the jury. We therefore find as a matter of law that defendant's consent to plaintiffs' settlement with Hamadi and AAA is *itself* inadmissible because it has so little "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," MRE 401, that we conclude its probative value is substantially out-

---

[1] Defendant also argues that it had the option of forcing Hamadi and AAA to defend against plaintiffs' claim at trial, which "would not have resulted in an expeditious use of the trial court's time." However, we do not take seriously the contention that defendant would deliberately engage in frivolity, nor do we take seriously the seemingly open admission that defendant would put other concerns ahead of its duties to its insureds.

weighed by the danger of unfair prejudice, confusion, redundancy, or other related concerns, MRE 403.

However, under the specific and narrow circumstances of this particular case, we would not find its admission to warrant reversal, for two reasons.[2] First, it appears that the consent to the settlement was really only incidental to the evidence plaintiffs truly sought, which was an admission, under oath and at trial, by defendant's claims adjuster that Chouman had in fact sustained a bodily injury and was in fact legally entitled to recover damages from Hamadi. The claims adjuster also testified that defendant had investigated whether Hamadi was collectable, and it determined that Hamadi was uncollectable beyond her policy limits. Therefore, defendant's subrogation rights would have been meaningless beyond the settlement amount anyway, and that was defendant's sole reason for consenting to the settlement. Therefore, it was clearly presented to the jury that defendant had not given its consent because it believed plaintiffs' claims to be meritorious, but because defendant had nothing to lose.

Second, plaintiffs introduced the evidence in order to establish that Chouman had suffered a serious impairment of body function, as required for her to be entitled to UIM benefits. Because the trial court granted a directed verdict in plaintiff's favor on that issue, the jury never had cause to consider the settlement evidence for that purpose. Consequently, any error in its admission became irrelevant.[3]

---

[2] That is to say, if we were not reversing for other reasons, discussed later in this opinion, we would not reverse on this basis alone.

[3] As we discuss later in this opinion, the trial court's grant of directed verdict was erroneous. Nonetheless, for whatever reason, the issue of whether Chouman suffered a serious impairment of body function was removed from the jury's consideration.

Defendant contends that the trial court's grant of the directed verdict was erroneous. We review directed verdicts de novo. *Zsigo v Hurley Med Ctr*, 475 Mich 215, 220-221; 716 NW2d 220 (2006). "When evaluating a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in the nonmoving party's favor." *Locke v Pachtman*, 446 Mich 216, 223; 521 NW2d 786 (1994). A directed verdict is appropriate where reasonable minds could not differ on a factual question. *Roberts v Saffell*, 280 Mich App 397, 401; 760 NW2d 715 (2008).

A "serious impairment of body function" is defined by MCL 500.3135(7) as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." Whether a plaintiff has suffered a "serious impairment of body function" is a threshold question that the trial court should decide as a matter of law unless "there is a material factual dispute regarding the nature and extent of the person's injuries . . . ." *McCormick v Carrier*, 487 Mich 180, 193-194; 795 NW2d 517 (2010). Whether someone has suffered a serious impairment is "inherently fact- and circumstance-specific and [the analysis] must be conducted on a case-by-case basis." *Id.* at 215. Therefore, the evidence must establish (1) an objectively manifested impairment of a body function, (2) that is significant or important to the specific injured person, and (3) that affects that specific person's general ability to lead his or her particular normal life. *Id.* However, there is no bright-line rule or checklist to follow in making that evaluation. *Id.* at 216.

The first part of our analysis is whether there is a material factual dispute regarding the nature and extent of Chouman's injuries. Plaintiffs presented testi-

mony from Chouman's treating physician, Dr. Hassan Hammoud, a board-certified orthopedic surgeon. Dr. Hammoud first saw Chouman as a patient in June 2007, approximately four months after the accident. He initially found that Chouman suffered from muscle spasms, pain, numbness, and restricted range of motion. He and other doctors ordered an MRI[4] and an EMG.[5] On the basis of the test results, and in partial reliance on the expertise of the specialists who performed them, Dr. Hammoud concluded that Chouman had a herniated disk in her lumbar spine and a pinched nerve. He noted that a later MRI performed in 2008 continued to show a bulge in the same disk, although less severe. He continued to treat her monthly with, among other things, pain medication. Dr. Hammoud opined that Chouman was disabled from being able to perform her job as a daycare school teacher.

Defendant presented testimony from its retained examining physician, Dr. Annette DeSantis, who was board-certified in physical medicine and rehabilitation. Dr. DeSantis examined Chouman in October 2008. She agreed that the one MRI she had available at that time showed a herniated disk in Chouman's spine, but she did not find any clinical evidence of nerve root irritation or damage during her tests, a year and a half later,

---

[4] Magnetic resonance imaging is a scanning technology that permits detailed, potentially three-dimensional viewing of soft tissue structures within the body—such as muscles, nerves, and connective tissue—without using ionizing radiation; as distinct from x-rays or CT scans, which do subject the body to ionizing radiation and are much less useful for visualizing soft tissue.

[5] Electromyography detects electrical activity in muscle tissues in order to evaluate the health and functionality of those tissues, although abnormal results can be indicative of a wide range of problems ranging from strictly muscle dysfunction to strictly nerve dysfunction. The test may be performed through the insertion of needles directly into muscles or through the use of surface electrodes.

which largely entailed asking Chouman to engage in a variety of movements and positions. She agreed that the 2008 MRI continued to reflect a "small disk protrusion" but "no definite neural impingement." She explained that bulging disks, per se, were normal. Dr. DeSantis opined that the 2008 MRI was consistent with her findings, but she did not render a consistency opinion concerning the 2007 MRI. She admitted that an EMG is an objective test and that a showing of radiculopathy[6] would be abnormal, but she had not reviewed the EMG itself. Dr. DeSantis found no objective basis for restricting Chouman from her preaccident activities, returning to her job, or doing anything around the house.

Dr. Hammoud pointed out that the second MRI's depiction of a more moderate protrusion of the disk could have been because Chouman's condition had actually improved, or it could have merely looked different as an artifact of the second imaging being performed by a different radiologist in a different place. Dr. DeSantis agreed with Dr. Hammoud that the apparent improvement depicted on the second MRI could have been because of true recovery or it could have been for "a lot of different reasons" including simply "different radiologists." Dr. DeSantis agreed that there was no medical evidence to show that the herniated disk in Chouman's spine was the result of anything other than the automobile accident, but she noted that there was simply no medical evidence whatsoever concerning the state of Chouman's spine before the accident. Dr. DeSantis testified that she would have expected Chouman to experience symptoms within a few days at the most if

---

[6] Radiculopathy is a generic term referring to a dysfunction in a nerve, generally pertaining to the nerve root at the spine. Presumably, this is a reference to Chouman's pinched nerve.

the accident had caused the herniation. However, she admitted that Chouman did complain of symptoms on the day of the accident and had apparently not reported any symptoms for at least the previous twelve months.

Ultimately, we find that there seems to be no dispute whatsoever that Chouman has a bulging disk in her spine, which was objectively manifested during two MRIs. Furthermore, we can conceive of no serious dispute that the spine is an extremely important part of every person's body. We cannot, however, agree with the trial court that reasonable minds could not differ regarding the extent and nature of Chouman's injuries. In particular, there appears to be a genuine dispute whether the objectively manifested abnormalities in Chouman's spine and nerve continue to be *impairments*. Dr. DeSantis unequivocally testified that she was unable to find an objective basis for Chouman to be restricted in any way. The trier of fact need not accept her conclusions, of course, but because there is a genuine question of fact regarding the nature and extent of Chouman's injuries, the threshold question of whether she suffered a "serious impairment of body function" may not be decided as a matter of law.[7] Consequently, the trial court erred by granting a directed verdict on that issue.

Because the trial court erroneously took the issue of whether Chouman suffered a "serious impairment of body function" from the jury's consideration, the judgment in plaintiffs' favor must be reversed and the

---

[7] We note that such impairments need not be permanent. See *McCormick*, 487 Mich at 203. Dr. DeSantis did not contradict Dr. Hammoud's examination or opine that Chouman had *never* been subject to an objective basis for restricting her life. However, we do not perceive that plaintiffs' claim is only about the past rather than also including the present and the future.

award of case evaluation sanctions vacated.[8] On retrial, in the absence of any stipulation between the parties to the contrary, plaintiffs may fully explain why Chouman discontinued some of her medical treatment so long as they do not identify defendant as the payor of benefits, evidence of defendant's consent to plaintiffs' settlement with Hamadi shall not be admissible, and the trial court shall submit the issue of whether Chouman suffered a "serious impairment of body function" to the jury for its consideration.

The award of case evaluation sanctions is vacated. The judgment in plaintiffs' favor is reversed, and the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

MURRAY, P.J., and FITZGERALD and RONAYNE KRAUSE, JJ., concurred.

---

[8] We decline to consider defendant's arguments pertaining to that award.