# STATE OF MICHIGAN

# COURT OF APPEALS

RACHEL SMITH,

Plaintiff-Appellant,

UNPUBLISHED
April 13, 2017

v

No. 329285
Genesee Circuit Court
LC No. 13-101299-NI

ONTAIS JENKINS JOHNSON, MONIQUE
NICOLE SMITH, PROGRESSIVE MICHIGAN
INSURANCE COMPANY, and WEST BEND
MUTUAL INSURANCE COMPANY,

Defendants-Appellees.

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Plaintiff was injured in an auto accident on June 10, 2011 when the driver of the striking vehicle disregarded a stop sign. Neither the driver nor the owner of the striking vehicle was insured, and so plaintiff sought coverage under the uninsured motorist provisions of defendant-insurers' policies. The insurers brought a motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) asserting that plaintiff failed to establish the third prong of the no-fault threshold test.[1] The trial court granted the motion. For the reasons set forth in this opinion, we reverse.

MCL 500.3135(1) limits tort liability for noneconomic loss to cases in which "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." A serious impairment of body function is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The elements of a serious impairment of body function are (1) an objectively manifested impairment, i.e., "one observable or perceivable from actual

---

[1] Despite a citation to MCR 2.116(C)(8), defendants did not claim that the allegations in plaintiff's complaint were insufficient to state a claim against them. They challenged only plaintiff's ability to factually prove her right to damages. In addition, the trial court considered the documentary evidence submitted by the parties in deciding the motion. Therefore, the motion is properly considered and reviewed under MCR 2.116(C)(10).

-1-

symptoms or conditions," (2) the impairment affected an important body function, i.e., a body function that has great value, significance, or consequence to the person affected, and (3) the impairment of the body function affected the person's general ability to lead her normal life. *McCormick v Carrier*, 487 Mich 180, 195-196, 199; 795 NW2d 517 (2010).

Plaintiff alleges that the crash injured her lumbar spine causing neurological impairment, and the trial court found that plaintiff met the first two prongs of the threshold. A CT scan performed three days after the accident revealed "severe foraminal narrowing due to intraforaminal disc protrusion" at L5-S1 and a "disc bulge with slight inferior foraminal narrowing" at L4-L5. This finding was consistent with plaintiff's complaints of bilateral, primarily left-sided, leg pain, which her physicians described as radicular.[2] She began physical therapy approximately three weeks after the crash, and the therapist noted positive findings on straight leg testing. After physical therapy did not resolve her difficulties, plaintiff underwent two epidural injections, which also did not provide significant relief. She was then referred for neurosurgical evaluation, and her nerve root compression was again objectively demonstrated by myelogram in June 2013. On July 9, 2013, plaintiff underwent lumbar surgery, specifically an L-5 discectomy and fusion of her L-5 and S-1 vertebrae. She had significant improvement initially but her left leg pain returned, and she developed a right leg pain as well. It appears, therefore, that the claimed impairment has been objectively demonstrated through orthopedic testing, observations of the physical therapist as well as imaging and findings on surgery. And for purposes of this appeal, defendant does not argue to the contrary. Similarly, there appears to be little, if any, dispute that the function of the lumbar spine is "an important body function."[3]

Defendant argues however that plaintiff's impairments have not "affect[ed plaintiff's] general ability to lead . . . her normal life." The trial court agreed, but it erred by focusing on the causation of her limitations rather than the subjective nature of plaintiff's life before and after the accident. While such evidence is generally required on the first prong, the third prong requires a subjective inquiry. *McCormick*, 487 Mich 197-198, 201-202. Once the impairment of an important body function has been objectively demonstrated, the focus becomes a subjective and individualized one, i.e. whether this plaintiff's "normal life" has been affected by that impairment. The record contains abundant evidence that plaintiff's ability to perform virtually any task involving her lower body has been substantially affected. The physician retained by defendant to evaluate plaintiff stated in his report that "she has no functional mobility of the lumbar spine." He disputed the cause, asserting that her spinal pathology had been due to degenerative rather than traumatic causes and that much of her pain and resulting limitations were due to stressors and emotion problems. However, these are causation issues, not threshold injury issues. The defendant's claim that the crash is not a proximate cause of plaintiff's limitations is one, like nearly all proximate cause questions, that is for the trier of fact to

---

[2] Radicular pain is neurogenic pain and typically results from compression of nerve roots exiting the spinal column.

[3] "We can conceive of no serious dispute that the spine is an extremely important part of every person's body." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444; 810 NW2d 88 (2011).

determine. *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). Moreover, to the degree that the defendant argued that plaintiff's injury was not so severe and so should not have caused such a substantial change in her life, defendant is really taking issue with the "nature and extent of [plaintiff's] injuries." If the trial court was inclined to agree that there was a factual dispute in this regard, then the proper course would be to have the threshold issue determine by a jury per MCL 500.3135 (2)(a).

An impairment "affects the person's general ability to lead his or her normal life" if it has "an influence on some of the person's capacity to live in [her] normal manner of living." 487 Mich at 202. "[T]here is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id.* at 203. Nor is there "an express temporal requirrment as to how long an impairment must last." *Id.* at 203. "[T]his requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis," and the inquiry "necessarily requires a comparison of the plaintiff's life before and after the incident." *Id.*

Defendant's primary argument is that because plaintiff had cervical spine impairments before the accident, her "normal life" was such that a lower spinal injury would not affect it.[4] That plaintiff had cervical spine pathology is evidenced in the medical records, and they note the degree to which that impairment affected her ability to fully use her neck and arms without pain. Her neck and arm pain flared up in early 2011, and she was seen by a neurosurgeon for her cervical problem. At the end of April, he wrote a notice to her employer that she should not work for two weeks and then extended it for three months while awaiting further diagnostic studies. However, the second notice indicated that plaintiff could resume work on June 6, 2011. Plaintiff's husband testified that because June 6 was only days from the end of the school year, they decided that she would just return in August of 2011 at the beginning of the new school year. However, he and plaintiff testified that due to the June 2011 accident she was unable to go back to work in the fall and was eventually terminated in December when her sick leave expired. While defendant argues that plaintiff would never have gone back to work even if the subject accident had not occurred, the neurosurgeon who performed her lumbar surgery testified to the contrary. He stated that "[w]hen I . . . saw her, the pain in her neck was on the wane and her back pain was still [the] overwhelming cause of her complaints."[5] Given that the physician treating her cervical problems released her to return to work just prior to the accident, and the

---

[4] Defendant's brief blurs the distinct nature of plaintiff's pre-accident cervical problem and and post-accident lumbar injury by referring to them all as "back" problems. The existence of cervical spine problems before an accident does not negate the new development of lumbar spine injury. To suggest that these are all just "back" problems is akin to suggesting that a right arm injury suffered in an accident is not significant because the person already had a left arm injury and so both before and after the accident the person had "arm" problems.

[5] We granted plaintiff's motion to expand the record so as to include the neurosurgeon's deposition testimony. *Smith v Johnson*, unpublished order of the Court of Appeals entered October 16, 2015 (Docket No. 329285), and MCR 7.216(A)(4).

observation of her lumbar surgeon, plaintiff has reasonable grounds to assert that her prior normal life included gainful employment.

Moreover, the limitations caused by plaintiff's cervical spine problems were different in kind and severity from those suffered as result of her lumbar injury. Plaintiff testified that she can "barely walk," that she has difficulty getting out of bed, that she cannot lift or bend, and that she requires assistance with showering. None of these activities were significantly limited as a result of her cervical problems. The record contains multiple post-accident disability certificates from her physician stating that she requires daily assistance taking care of her own personal needs such as "dressing, grooming, medication dispensing, ambulating, bathing, toiletry and general hygiene." Plaintiff's husband corroborated plaintiff's account in his own deposition testimony, and he attested to providing numerous household services as well as personal and attendant care services to plaintiff after the accident including help with household work and at times assistance with bathing and grooming. He testified that by 2013 helping plaintiff get out of bed was a daily task and that by this point he had to help plaintiff "with personal grooming and everything."

We find little, if any support in the record for defendant's claim that these types of limitations existed before the auto accident. Defendant refers us to some of plaintiff's pre-accident medical records. However, at best they contain very occasional references to low back pain *without* radicular signs or symptoms. And in the several years of records defendant presents, there is only one notation of a functional limitation caused by low back pain – a single reference to having difficulty lifting small children at the school where she was employed. The pre-accident medical records are overwhelming devoted to her well-documented cervical radiculopathy and some gynecological issues. They do indicate that she was significantly limited in physical recreational activities due to her cervical issues and in that respect we agree that plaintiff's pre-accident life contained few physical recreational activities once the cervical problems began.[6] However, the depositions and the medical records from before the accident leave no doubt that prior to the accident, plaintiff was ambulating without difficulty and did not require assistance with personal care such as bathing, dressing, and grooming.

Reversed. We do not retain jurisdiction. Plaintiff may tax costs.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro

---

[6] Plaintiff argues that her cervical limitations were temporary, and so her "normal life" should be based upon her status prior to the cervical problems. When a plaintiff has suffered successive injuries and wishes to have her "pre-impairment lifestyle considered as [her] 'normal life,' " she has the burden to "prove that [her] preexisting impairment is temporary." *Benefiel v Auto-Owners Ins Co*, 482 Mich 1087, 1087; 759 NW2d 814 (2008). While plaintiff may present evidence at trial that the cervical problem was temporary, we need not consider that issue since we find that even allowing for the cervical limitations, plaintiff met the threshold test.