*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHEMETRIA SPRINGER,

      Plaintiff-Appellant,

UNPUBLISHED
March 28, 2019

v

JOHN DOE,

      Defendant,

No. 343606
Wayne Circuit Court
LC No. 16-011912-NI

and

LIBERTY MUTUAL INSURANCE COMPANY,

      Defendant-Appellee.

Before: SHAPIRO, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals the trial court's order granting defendant summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff was involved in a motor vehicle accident on September 18, 2013, and because the driver and owner of the other vehicle were unknown, plaintiff brought suit against defendant to recover uninsured motorist benefits. Defendant moved for summary disposition asserting that there were no relevant disputes of fact and that plaintiff had failed to demonstrate that she satisfied the "serious impairment of body function" threshold as defined by MCL 500.3135(5). The trial court granted the motion, ruling as a matter of law that plaintiff's injuries did not affect her general ability to lead her normal life. We affirm.[1]

---

[1] A trial court's decision to grant summary disposition is reviewed de novo. *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016).

Under the no-fault act, MCL 500.3101 *et seq.*, tort liability is limited. *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). "A person remains subject to tort liability . . . only if the injured person has suffered . . . [a] serious impairment of body function . . . ." MCL 500.3135(1). The issue of serious impairment is a question of law for the court in either of two circumstances. First, if "there is no factual dispute concerning the nature and extent of the person's injuries." MCL 500.3135(2)(a)(*i*). Second, if such a factual dispute "is not material to the determination whether the person has suffered a serious impairment of body function." MCL 500.3135(2)(a)(*ii*). The parties dispute the nature and extent of plaintiff's injuries. Plaintiff has presented an MRI report and a spinal kinetics report that showed some abnormalities including disc bulges and ligament hypertonicity. Defendant, relying on a retained expert, takes the position that any abnormalities in these studies were neither serious nor the result of the accident. However, this factual dispute is not material to the threshold determination in this case given that we agree with the trial court's conclusion that plaintiff's alleged injuries did not affect her general ability to lead her normal life.

"[S]erious impairment of body function" is defined by statute as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). In order to establish a serious impairment of a body function, the plaintiff must show "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). Whether an individual meets this threshold is an "inherently fact- and circumstance-specific" analysis. *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). To determine whether a person's general ability to lead his or her normal life has been affected, "a comparison of the plaintiff's life before and after the incident" is required. *McCormick*, 487 Mich at 202. The impairment must have "an influence on some of the person's capacity to live in his or her normal manner of living." *Id*.

Applying these standards, we agree with defendant that even taking plaintiff's claims as true, she has not established a serious impairment of a body function. Although plaintiff filed suit nearly three years after the car accident, her response to defendant's motion relied only on medical records from the first three months following the accident and her deposition testimony.[2] Her physicians' records from those months do not note expectations that the injury would be long lasting or produce functional limitations expected to last beyond the three-month period during which she was prescribed treatment. Dr. Marvin Bleiberg, a M.D. physiatrist, prescribed various work restrictions, including that plaintiff avoid lifting anything over 15 pounds. But these restrictions did not interfere with plaintiff's ability to function as a paralegal. Nor has plaintiff asserted any difficulty with tasks relevant to her employment or her ability to function in

---

[2] Records of plaintiff's visit to her primary care doctor following the accident were not provided. The balance of plaintiff's medical records show that she received several chiropractic treatments but that she did not participate in physical therapy even though it was recommended. It does not appear that plaintiff was ever considered a surgical candidate. She recalled getting two or three epidural injections but there is no reference to injections in the medical records submitted.

any respect other than performance of some occasional athletic activities. She described having to limit her participation in running, bowling, archery, weight lifting and dancing. However, when asked how often she performed these activities before and after her injury, her answers demonstrated that these activities were not ones in which she had regularly participated and that she was able to continue participating in some of them.

Plaintiff was prescribed household replacement services for three months. We acknowledge that an impairment does not need to last for a certain amount of time. *Patrick*, 322 Mich App at 607. At the same time, there is no caselaw holding that short-term replacement services, by themselves, establish that a plaintiff's general ability to lead a normal life has been affected. And plaintiff did not submit any evidence that she continued to need replacement services after three months or that she sought them. In sum, there is no evidence that the accident resulted in plaintiff having continuing difficulties at home, at work or in any other setting other than at certain athletic activities in which she participated only occasionally, if not rarely. We do not mean to suggest that limitations on athletic activities cannot in and of themselves affect an individual's ability to lead his or her normal life. To the contrary, they can and do in many situations. However, given the limited record before us we cannot conclude that limits on these occasional activities, standing alone, are significant enough to affect plaintiff's general ability to live her normal life.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering
/s/ Michael J. Kelly