*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARKAN SAKARYA,

        Plaintiff-Appellee,

and

HS, by Next Friend ARKAN SAKARYA, and
NOOR KAROOMI,

        Plaintiffs,

v

FARM BUREAU INSURANCE COMPANY,

        Defendant-Appellant,

and

BARRY STANLEY and ABIGAIL LYNNE
MAXON,

        Defendants.

UNPUBLISHED
December 18, 2025
2:33 PM

No. 371673
Oakland Circuit Court
LC Nos. 2023-199024-NF; 2023-
      201873-NI

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

This is a case concerning the plaintiff's claim for noneconomic tort damages under MCL 500.3135 of the no-fault act, MCL 500.3101 *et seq*. Defendant-appellant Farm Bureau Insurance Company appeals by leave granted[1] the trial court's orders granting partial summary disposition to plaintiff-appellee Arkan Sakarya. The trial court concluded as a matter of law that appellee established a threshold injury for the

---

[1] *Sakarya v Farm Bureau Ins Co*, unpublished order of the Court of Appeals, entered January 2, 2025 (Docket No. 371673).

-1-

purposes of MCL 500.3135 and that the only remaining issue was a question of damages. On appeal, Farm Bureau argues that there is a question of fact regarding whether appellee sustained a threshold injury and, to a lesser extent, whether he established causation as well.

We agree there is a question of fact regarding whether appellee sustained a threshold injury for the purposes of MCL 500.3135. Therefore, we reverse the trial court and remand to that court for further proceedings.

## I. FACTS

On April 20, 2019, appellee was in a motor-vehicle accident with defendant Barry Stanley. According to appellee, he was driving on John R Road when Stanley exited a private drive, failed to yield the right-of-way, and ultimately collided with appellee. Appellee's wife and four children also were in the car at the time of the accident. Stanley admits fault for the accident.

At the time of the accident, appellee had a no-fault insurance policy with Farm Bureau, which included underinsured coverage up to $500,000. Stanley's insurance policy had a limit of $100,000. Appellee filed suit against Stanley and Farm Bureau.[2] On appeal, with regard to Farm Bureau, appellee is seeking to invoke the underinsured provision in the Farm Bureau policy and to obtain coverage because of Stanley's negligence. The complaint alleged that appellee's injuries "are permanent, to the degree that [appellee] suffered a loss in ability to earn money as before, and will have impaired earning capacity in the future," and that appellee would "continue to have pain and suffering as well as permanency."

Appellee moved for summary disposition under MCR 2.116(C)(10), asserting that he suffered a threshold injury as a matter of law per *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010). Appellee argued that he suffered an objectively manifested impairment based upon the following facts:

[1.] Stitches to [his] foot and arm wrapped in the emergency room;

[2.] Left hand casted in the emergency room;

[3.] [A pain management specialist, Dr. Usama Gabr, M.D.] diagnosed [appellee with] spondylosis, cervical region and radiculopathy, cervicothoracic region, pain in left shoulder, and bursitis of left shoulder, rotator-cuff tear, right knee pain, post concussive syndrome headache and cervical headache related to whiplash injury from the impact;

[4.] [That an] MRI of the left shoulder showed intrasubstance and/or partial tearing of the supraspinatus tendon without retraction as well as a small amount of fluid in the subacromial and subdeltoid bursa and borderline impingement;

---

[2] Defendant Abigail Maxson owned the vehicle driven by Stanley, and appellee filed an owner's liability claim against Maxson. Neither Stanley nor Maxson are parties on appeal. The other plaintiffs—HS and Noor Karoomi—are appellee's daughter and wife, neither of whom are parties on appeal. As used in this opinion, appellee refers to Arkan Sakarya.

[5.] [That an] MRI of the right knee joint showed a tear of [his] posterior horn of the medial meniscus. MRI of [his] left hand showed high PDFS signal in the proximal and phalanges of the thumb extending to the interphalangeal joint which may represent bone marrow edema and/or other reactive change;

[6.] [His] [c]ervical spine MRI showed increased cervical lordosis;

[7.] [That his] MRI [showed his] left hand [had] high PDFS signal in the proximal and phalanges of the thumb extending to the interphalangeal joint which may represent bone marrow edema and/or other reactive change; and

[8.] [A counselor, Haitham Saffo, LPC] [diagnosed that he had] generalized anxiety disorder, post-traumatic stress disorder, and major depressive disorder, fear, no patience, anger spells and forgetfulness, frustrations with forgetfulness and fear of driving and worsening memory. [Record citations and emphasis omitted.]

Appellee maintained that these affected body functions were threshold injuries because the spine is an important part of a person's body, and his maladies impacted his "above-shoulder positioning, walking, moving his neck, back and shoulder" as well as other movements important to his job as a carwash attendant. These included "his ability to move his body in a manner that he needs, such as, twisting, bending, lifting, pushing or pulling." Further, relying primarily on his own deposition testimony, appellee argued that his ability to lead his normal life has been restricted because his ability to perform his job has been affected. According to appellee, his injuries also impacted his ability to perform the following activities: "standing, perform household chores, shaving, bathing, engaging in intimate relations with his wife, put shoes/socks on, including dressing and grooming." Appellee said that he was "no longer able to go bicycling, traveling, going out socially, sleep well, attend picnics with his friends and has memory loss and trouble sleeping." Thus, appellee maintained, he was entitled to judgment in the amount of $500,000.

In response, Farm Bureau argued that material questions of fact remained. Farm Bureau asserted that appellee relied primarily on Dr. Gabr's medical records without addressing all of the evidence in the case, including the accident report and the opinions of other experts. Farm Bureau emphasized that the records from the emergency room showed that appellee complained only of injuries to his left hand and thumb, his right toe, and his right leg. Moreover, at the emergency room, he denied any head injury, nausea, vomiting, neck pain, amnesia, or vision changes, and he had no tenderness to his "spinous process" or neck. A CT of his head was normal, and he was diagnosed only with a laceration and thumb dislocation. Farm Bureau challenged Dr. Gabr's credibility, asserting that he "is infamous for grossly over treating and over billing all of his patients." In contrast, Farm Bureau emphasized the opinions of Dr. Adil Ali, M.D., as well as those of Dr. Donald Garver, M.D., both of whom disagreed with appellee's experts regarding the appropriate treatment and ongoing effect of the injuries. According to Farm Bureau, a clear question of fact remained regarding the nature and extent of appellee's injuries.

Dr. Ali personally examined appellee on November 21, 2019. In relevant part, he summarized his physical examination of appellee as follows:

[1.] His left thumb is covered with two Band-Aids. He presents with an ACE wrap in his left upper extremity that is removed for examination. He states that he has no restrictions on his left upper extremity postoperatively and was told to use it.

[2.] Neurological/Musculoskeletal: Face is symmetric. Strength testing reveals full strength throughout with the exception of the left upper extremity in which he defers movement of his left thumb due to pain and guarding. There is no swelling or objective abnormalities of the left wrist or hand. . . .

[3.] Cervical, thoracic and lumbar range of motion is full. . . . No swelling or objective signs of chronic regional pain syndrome.

[4.] Bilateral shoulder examination is with full rotator cuff muscle strength and negative impingement testing. Bilateral knee examination is with negative Lachman's, McMurray's, anterior or posterior drawer signs; full range of motion and no swelling.

On the basis of his examination as well as his review of appellee's medical records, Dr. Ali concluded:

[1.] My diagnoses, based on the history provided, my examination findings and information made available to me are as follows:

[2.] Left thumb subluxation, right great toe laceration, right lower extremity abrasion, cervical and lumbar sprain/strain injuries with no MRI evidence of focal disc herniations or stenosis, left shoulder sprain/strain injury with MRI reports noting increased signal and a partial tear of the supraspinatus tendon without retraction. . . .

[3.] Symptoms exaggeration/magnification. The patient is with persistent report of neck and low back pain *for which there is no clear objective medical basis*. He states that he continues to require help with dressing, showering and feeding, which suggests malingering. He has not worked since the motor vehicle accident *for which there is no clear objective medical basis at this point in time*. [Emphasis added.]

Dr. Ali did not dispute that appellee suffered some injuries, but he believed that the treatment provided was unnecessary and that appellee no longer needed to be under any restrictions. For instance, Dr. Ali opined that work restrictions were warranted for a period of four weeks after the accident, but he saw no reason for ongoing work restrictions. Similarly, Dr. Ali stated that appellee may have needed replacement services for four weeks, but he opined that replacement services were no longer needed. Dr. Ali also concluded that transportation services and attendant care were never needed. Dr. Ali indicated that physical therapy twice a week for a period of eight to 12 weeks after the accident, coupled with anti-inflammatories and muscle relaxants, was warranted. But, in his view, the physical therapy documented by appellee's providers was "not consistent with medical standards" or warranted for appellee. Dr. Ali believed that appellee had reached a point of "maximum medical improvement."

Dr. Garver did not personally examine appellee. Instead, he prepared a report on the basis of his review of medical records. He primarily opined on the necessity of the treatment plaintiff received, asserting that surgery on appellee's wrist and thumb was unnecessary, that the pain management was excessive, and that continued treatment was unwarranted. Dr. Garver wrote:

-4-

[T]his whole operation [to the wrist and thumb] does not seem to be appropriate. Why he had a wrist arthroscopy without evidence to suggest a significant wrist injury and why he had a repair of his ulnar collateral ligament of the thumb when the suspicion was only for a partial tear of the ulnar collateral ligament of the thumb is hard to imagine. . . . Thus, this operation, in my opinion, was totally inappropriate and unnecessary.

* * *

Thus, there was no neurologic deficit and the pain being managed, in my opinion, was by very excessive means. In my opinion, this gentleman's pain issues could well have been managed in a very conservative fashion by observation, rest, and time rather than this invasive treatment program involving numerous injections in the neck and back as well as intralaminar epidural steroid injections in the lumbar region.

In my opinion, the treatment for Mr. Arkan Sakarya was excessive in all areas and the operation on his wrist, and particularly his thumb, was absolutely inappropriate and unnecessary from the information that I have been given. There is no need for continued treatment, in my opinion, relative to his alleged injuries sustained in the 04/20/19 motor vehicle accident.

On May 29, 2024, the trial court held a hearing on appellee's motion for summary disposition. Following the parties' arguments, the trial court granted appellee's motion for summary disposition as to the question of whether appellee sustained a threshold injury, but the trial court denied appellee's motion to enter judgment in the amount of $500,000, concluding that questions of fact remained regarding damages. The trial court stated:

As to this motion, I sort of went past the negligence, because it didn't even seem to really be in play. We have a driver who admits negligence. So that is summary disposition without, I think, any room for ambiguity to anyone, and I'm willing to give that there's injury as well, because we have objectively manifested injury, which then brings us to whether it meets the burden for serious impairment of a body function. Okay? And we have allegations here. Yeah, that's what he said, I suppose. We have the [appellee] stating there's pain in his head, back, neck, shoulder, and knees. But of note, there was a fracture to [his] wrist, which there was surgery for, and I know the IME is saying there could . . . have been another mode of treatment, but it doesn't seem—the IME, when I looked at it, didn't seem to deny there was a fracture. And the record review doesn't really do anything to address that issue either. You also have a torn—tear in the foot, which required stitching. And there are scars to the foot and wrist. You also have tears to the knee and shoulder, which there's indication could require additional surgery. You have the testimony, which is unrebutted, and that is that there's trouble sleeping. I show memory loss, as indicated.

[Appellee] raised through unrebutted testimony regarding intimacy, and testimony about lifestyle change, impairment in sociality and hobbies, lack of sleep, generalized anxiety, and so forth, for which there has been treatment. Under the McCormick Standards, I think that gives you serious impairment, and I would grant serious impairment summary disposition. I would not grant any finding as to the damages. That's a jury question, and the jury can vary greatly as to how they view the amount of the damages. But I would give

you that there is a serious impairment of a body function for the reasons I'm stating, and I do that fully aware of the IME and the record review. I don't think it overcomes that if you have <u>McCormick</u> met here.

The trial court entered a written order granting appellee's motion for summary disposition on "the issues of negligence, injuries, proximate cause and serious impairment of body functions" and denying the motion as to damages for the reasons stated on the record.

Farm Bureau now appeals, arguing that the trial court ignored evidence demonstrating that material questions of fact existed as to causation and whether appellee's injuries crossed the impairment threshold. Specifically, Farm Bureau relies on the opinions of Dr. Ali and Dr. Garver, and Farm Bureau challenges the credibility of Dr. Gabr's opinions. According to Farm Bureau, the trial court improperly usurped the jury's role by assessing the experts' credibility and weighing the evidence.

Appellee responds that there is no genuine issue of material fact and that the trial court properly granted partial summary disposition in his favor. He claims he suffered objectively manifested impairments to his left hand, shoulders, knees, foot and toe, and cervical spine, as well as "lumbar pain" and "mental injuries." Appellee says these functions are important and that these impairments affected his general ability to lead his normal life.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Lockport Twp v City of Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017). "A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. (quotation marks and citation omitted). "Summary disposition under MCR 2.116(C)(10) is appropriate when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Id*. (cleaned up). "In deciding a motion under subrule (C)(10), the trial court views affidavits and other documentary evidence in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted).

## III. DISCUSSION

Farm Bureau argues that the trial court erred by granting summary disposition in favor of appellee on the issue of whether he suffered a serious impairment of body function for the purposes of MCL 500.3135. We agree.

"[T]he no-fault act generally abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle . . . ." *Johnson v Recca*, 492 Mich 169, 175; 821 NW2d 520 (2012). However, pertinent to this appeal, as set forth in MCL 500.3135, a third party may be held liable in tort when a plaintiff suffers a serious impairment of body function. In relevant part, when the accident occurred in April 2019, the statute provided:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

(2) For a cause of action for damages under subsection (1) . . . , all of the following apply:

(a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

\* \* \*

(5) As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.[3]

As set forth in the statute, there are three requirements necessary to establish a serious impairment of body function: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). Significant to this case is the role of the trial court in determining whether a person suffered a threshold injury within the meaning of MCL 500.3135. As explained by our Supreme Court:

Under the plain language of the statute, the threshold question whether the person has suffered a serious impairment of body function should be determined by the court as a matter of law as long as there is no factual dispute regarding "the nature and extent of the person's injuries" that is material to determining whether the threshold standards are met. If there is a material factual dispute regarding the nature and extent of the person's injuries, the court should not decide the issue as a matter of law. Notably, the disputed fact does not need to be outcome determinative in order to be material, but it should be "significant or essential to the issue or matter at hand." [*Id*. at 193-194 (footnotes and citation omitted).]

See also MCL 500.3135(2)(a)(*i*) and (*ii*) (providing that serious impairment of body function may be decided as a matter of law when there is either "no factual dispute concerning the nature and extent of

---

[3] The accident in this case occurred about two months before substantial amendments to the no-fault act became effective on June 11, 2019. See 2019 PA 21 and 22. Those amendments added language to MCL 500.3135(5) elaborating upon the term "serious impairment of body function," but because those amendments merely codified *McCormick*, they are not relevant here.

the person's injuries" or "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material").

For example, in *McCormick*, the Court began its application of MCL 500.3135 to the facts of that case by considering whether there was a material factual dispute regarding whether the serious-impairment threshold had been met. *Id*. at 216. More specifically, considering the evidence of impairment, the Court concluded that no material question remained, reasoning:

> To begin with, there is no factual dispute that is material to determining whether the serious impairment threshold is met. The parties do not dispute that plaintiff suffered a broken ankle, was completely restricted from bearing weight on his ankle for a month, and underwent two surgeries over a 10-month period and multiple months of physical therapy. *The parties do dispute the extent to which plaintiff continues to suffer a residual impairment* and the potential for increased susceptibility to degenerative arthritis. Plaintiff has provided at least some evidence of a physical basis for his subjective complaints of pain and suffering, but *defendant disputes whether there is persuasive evidence of impairment beyond plaintiff's subjective complaints. This dispute is not significant or essential to determining whether the serious impairment threshold is met in this case, however, because plaintiff has not alleged that the residual impairment, to the extent that it exists, continues to affect his general ability to lead his pre-incident "normal life,"* the third prong of the analysis. Moreover, it is not necessary to establish the first two prongs. Therefore, the dispute is not material and does not prevent this Court from deciding whether the threshold is met as a matter of law under MCL 500.3135(2)(a). [*Id*. at 216-217 (emphasis added; footnotes omitted).]

Thus, as explained in *McCormick*, an impairment need not be permanent to satisfy the threshold requirement. *Id*. at 203. However, whether a person maintains that the impairment is permanent or ongoing is relevant to the determination whether there is a material question of fact regarding the nature and extent of the injuries. See *id*. at 216-217. See also *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444 n 7; 810 NW2d 88 (2011). For example, in *McCormick*, the Court made clear that there was a dispute regarding whether the plaintiff continued to suffer residual impairment. *McCormick*, 487 Mich at 216-217. This dispute was not material, however, because the plaintiff did not contend that his alleged residual impairment continued to affect his normal life. *Id*.

In comparison, in *Chouman*, 293 Mich App at 444 & n 7, this Court considered a factual dispute regarding the impairment threshold in which the plaintiff sought not only past damages, but also damages for the present and the future. As in the present case, *Chouman* also involved a dispute among the parties' respective experts. *Id*. at 444. Determining that material questions of fact remained regarding the underlying impairment threshold despite the existence of objective evidence of an injury apparent in an MRI, this Court stated:

> [W]e find that there seems to be no dispute whatsoever that [the plaintiff] has a bulging disk in her spine, which was objectively manifested during two MRIs. Furthermore, we can conceive of no serious dispute that the spine is an extremely important part of every person's body. We cannot, however, agree with the trial court that reasonable minds could not differ regarding the extent and nature of [the plaintiff's] injuries. In particular, there appears to be a genuine dispute whether the objectively manifested abnormalities in [the

plaintiff's] spine and nerve continue to be impairments. Dr. DeSantis [the defendant's expert] unequivocally testified that she was unable to find an objective basis for [the plaintiff] to be restricted in any way. The trier of fact need not accept her conclusions, of course, but because there is a genuine question of fact regarding the nature and extent of [the plaintiff's] injuries, the threshold question of whether she suffered a "serious impairment of body function" may not be decided as a matter of law. [*Id.* (emphasis omitted).]

In a footnote, this Court also observed that Dr. DeSantis did not contradict the opinion of the plaintiff's expert regarding the existence of a past injury, nor did Dr. DeSantis opine that the plaintiff "had *never* been subject to an objective basis for restricting her life." *Id.* at 444 n 7. These facts did not alter this Court's conclusion, however, because the plaintiff's claims related not only to the past but also included the present and the future. *Id.*

Turning to the present case, to the extent that the trial court concluded that there was "no factual dispute concerning the nature and extent of [appellee's] injuries," MCL 500.3135(2)(a)(*i*), the trial court erred by doing so. Certainly, appellee appears to have suffered injuries, but Farm Bureau presented expert testimony from Dr. Ali to support that there was no objective medical basis for many of appellee's subjective complaints of pain and suffering and that there were no medical reasons for ongoing work restrictions or replacement services. In particular, Dr. Ali opined, "Symptoms exaggeration/magnification. The patient is with persistent report of neck and low back pain for which there is no clear objective medical basis." Dr. Ali also opined that "there is no clear objective medical basis at this point in time" for the fact that appellee has not worked since the accident. These opinions from Dr. Ali show that there is a question of fact regarding the nature and extent of appellee's injuries for the purposes of MCL 500.3135(2)(a)(*i*). See *Chouman*, 293 Mich App at 444. While a jury is free to disregard these opinions at trial, at the summary-disposition stage, they are sufficient to establish a genuine issue of material fact regarding that statutory provision. See *Patrick v Turkelson*, 322 Mich App 595, 615; 913 NW2d 369 (2018).

Further, to the extent that the trial court concluded that "[t]here is a factual dispute concerning the nature and extent of [appellee's] injuries, but the dispute is not material to the determination whether [appellee] has suffered a serious impairment of body function," MCL 500.3135(2)(a)(*ii*), the trial court erred for essentially the same reasons. As in *Chouman*, it is material that Dr. Ali and Dr. Garver dispute that appellee has an injury that requires ongoing treatment and that Dr. Ali disputes that appellee's injuries warrant any kind of ongoing restrictions. In other words, as in *Chouman*, there is a dispute between the parties' experts regarding whether and to what extent, if at all, appellee has suffered injuries that continue to affect "the present and the future." See *Chouman*, 293 Mich App at 444 n 7. A jury will be free to disagree with Farm Bureau's experts and to credit appellee's evidence, but the dispute among the experts regarding appellee's injuries should have precluded the trial court from resolving the impairment question as a matter of law. See *Patrick*, 322 Mich App at 615.

IV. CONCLUSION

To summarize, the trial court erred by concluding that objective evidence that appellee sustained injuries was sufficient to conclusively establish an impairment as required by MCL 500.3135. In this regard, the statute requires an impairment, and "when considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *McCormick*, 487 Mich

-9-

at 197 (quotation marks and citation omitted). Thus, while it is true that Dr. Ali did not dispute that appellee suffered some injuries and opined that these injuries warranted treatment over the course of eight to 12 weeks following the accident, these undisputed injuries do not preclude the existence of a material factual question because, as in *Chouman*, appellee has not limited his claims to past damages. Rather, appellee seeks $500,000 in damages, and he alleges permanent impairments and an ongoing inability to work as well as perform household and various other activities. Therefore, Farm Bureau is entitled to present evidence to the jury regarding the nature and extent of his injuries. See *Chouman*, 293 Mich App at 444.[4]

Because there is a dispute regarding whether and to what extent, if at all, appellee is suffering present impairments, and will suffer impairments in the future, the trial court erred by concluding as a matter of law that the impairment threshold of MCL 500.3135(2)(a) is satisfied. Accordingly, we reverse the trial court's ruling to that extent and remand to that court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

[4] On appeal, the parties comb through the lower-court record in discussing whether appellee satisfied the three elements of MCL 500.3135(5) with respect to his left hand, shoulders, knees, toe, spine, and mental health. However, it is not necessary to discuss the elements of MCL 500.3135(5) unless the plaintiff first satisfies MCL 500.3135(2)(a), i.e., that there is no material dispute regarding the nature and extent of the plaintiff's injuries. See *McCormick*, 487 Mich at 194. Here, as explained, there is such a material dispute, so discussing the elements of MCL 500.3135(5) is premature.