*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RANDY R. YBARRA,

      Plaintiff-Appellant,

v

RANDAL HENRY VISINTAINER, FORD
MOTOR COMPANY, and FORD MOTOR
CREDIT COMPANY,

      Defendants-Appellees.

UNPUBLISHED
November 21, 2019

No. 342911
Wayne Circuit Court
LC No. 15-010945-NI

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

In this third-party no-fault action alleging a serious impairment of body function, plaintiff appeals as of right the judgment in defendant's favor following a jury trial. We affirm.

## I. BACKGROUND

This case concerns an accident that occurred on August 15, 2014. A vehicle operated by defendant Randal Visintainer hit plaintiff while plaintiff was riding his bicycle through a crosswalk. Visintainer admitted fault in causing the accident, but defended against plaintiff's third-party claim, arguing that plaintiff was comparatively negligent and that plaintiff did not suffer a serious impairment of body function as a result of the accident. At a jury trial, plaintiff presented evidence that he complained of pain to his shoulder immediately following the accident. After continued pain, an orthopedic surgeon, Dr. Jiab Suleiman, ordered a magnetic resonance imaging (MRI) test of his shoulder and diagnosed him with a labral tear and a bruised or injured acromioclavicular (AC) joint. In December 2014, plaintiff underwent surgery to clean up the AC joint, remove bone chips, and repair an apparent superior labrum anterior to posterior (SLAP) tear. Thereafter, plaintiff was placed on certain restrictions and prescribed physical therapy. Plaintiff's attendance at physical therapy was poor, which delayed his recovery, but he was ultimately released from care with no restrictions in September 2015. Plaintiff, however, claimed to have continued pain and difficulty performing daily activities. He visited a family physician, Dr. Amrinder Singh, in Illinois in February 2017, and was diagnosed with

-1-

hypertrophy, or enlargement, of the left AC joint. After plaintiff underwent another MRI, Dr. Singh recommended additional physical therapy. At trial, defendants' experts, Dr. William Kohen and Dr. Jack D. Lennox, who had examined plaintiff and reviewed his medical records, disputed that plaintiff had a SLAP tear and opined that he had fully recovered from any injury he sustained in the accident. Plaintiff moved for a directed verdict on the serious-impairment issue, which the trial court denied. Subsequently, the jury found that plaintiff did not suffer a serious impairment of body function, and the trial court entered judgment in favor of defendants. Plaintiff moved for a new trial on the grounds that the trial court improperly denied his motion for a directed verdict and that defense counsel made improper arguments during trial. The trial court denied the motion. This appeal followed.

## II. ANALYSIS

## A. DIRECTED VERDICT

First, plaintiff argues that the trial court erred by denying his motion for a directed verdict on the issue whether he suffered a serious impairment of body function. We review de novo a trial court's decision on a motion for a directed verdict. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 697; 819 NW2d 28 (2011). In reviewing the motion, all evidence and "all legitimate inferences from the evidence must be viewed in the light most favorable to the nonmoving party to determine whether a fact question existed." *Id*. A directed verdict is proper "only when no factual question exists upon which reasonable minds could differ." *Id*. "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Taylor v Kent Radiology*, 286 Mich App 490, 500; 780 NW2d 900 (2009).

"Tort liability is limited under the Michigan no-fault insurance act." *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018), citing *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). Under MCL 500.3135(1), a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."

As explained by this Court in *Patrick*, 322 Mich App at 606-608:

> The phrase "serious impairment of body function" is defined by statute as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Under *McCormick*, the test for establishing a serious impairment of body function requires showing "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195.

> First, an objectively manifested impairment is one "that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. at 196. The inquiry

focuses on "whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *Id*. at 197. The term "impairment" means "the state of being impaired." *Id*. (quotation marks and citation omitted). In turn, "impaired" means the state of (1) "being weakened, diminished, or damaged" or (2) "functioning poorly or inadequately." *Id*. (quotation marks and citation omitted). Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested. *Id*. at 198. Medical testimony is generally, but not always, required to make this showing. *Id*.

Second, the important-body-function inquiry is "an inherently subjective" one. *Id*. at 199. The focus is on whether the body function "has great value, significance, or consequence," and the relationship of that function to the individual's life must be considered. *Id*. (quotation marks and citation omitted).

Third, the impairment to an important body function affects a person's general ability to lead a normal life if it has "an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. at 202. This is also a subjective inquiry. *Id*. The statute does not require the person's ability to lead a normal life to have been destroyed or for the impairment to last a certain period of time. *Id*. at 202-203. Instead, the statute only requires that the impairment *affect* the person's *ability* to live in his or her normal manner of living. *Id*. at 202. The focus is not on whether a person's normal manner of living itself has been affected, and "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 202-203.

However, the issue of whether a serious impairment of body function has been incurred is a question of law to be decided by the court only if (1) "[t]here is no factual dispute concerning the nature and extent of the person's injuries" or (2) "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function . . . ." MCL 500.3135(2)(a). Accordingly, in *McCormick*, 487 Mich at 215, our Supreme Court instructed courts applying MCL 500.3135 to begin by determining "whether there is a factual dispute regarding the nature and the extent of the person's injuries and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met." When there is a genuine issue of material fact regarding the nature and extent of a person's injuries, the threshold question of whether there was a serious impairment of body function is for the jury and may not be decided as a matter of law. *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444; 810 NW2d 88 (2011).

In *McCormick*, 487 Mich at 216, our Supreme Court found that there was no factual dispute that was material to determining whether the serious impairment threshold was met. In that case, there was no dispute that the plaintiff suffered a broken ankle, was restricted from bearing any weight on his ankle for a month, and underwent two surgeries and multiple months

of physical therapy. *Id*. The parties did, however, dispute the extent to which the plaintiff continued to suffer a residual impairment and the potential for increased susceptibility to degenerative arthritis. *Id*. Nonetheless, the Court stated:

> This dispute is not significant or essential to determining whether the serious impairment threshold is met in this case, however, because plaintiff has not alleged that the residual impairment, to the extent that it exists, continues to affect his general ability to lead his pre-incident "normal life," the third prong of the analysis. Moreover, it is not necessary to establish the first two prongs. Therefore, the dispute is not material and does not prevent this Court from deciding whether the threshold is met as a matter of law under MCL 500.3135(2)(a). [*Id*. at 216-217.]

The Court concluded that the other facts material to determining whether the serious impairment threshold was met were undisputed. *Id*. at 217. After the incident, the plaintiff could not return to work for at least 14 months and did not return for 19 months, never returned to his original job as a medium truck loader, and was eventually able to perform his preincident activities at the same level. *Id*. The Court concluded that the plaintiff had shown an objectively manifested impairment of an important body function because he suffered a broken ankle and was unable to walk or perform other functions that were of consequence to his ability to work. *Id*. at 218. Furthermore, the Court concluded that the plaintiff showed that the impairment affected his general ability to lead his normal life because he could not put weight on his ankle for a month, he underwent two surgeries and multiple months of physical therapy, and he was unable to return to work for 19 months. *Id*. at 218-219. The Court concluded "that some of plaintiff's capacity to live in his pre-incident manner of living was affected." *Id*. at 219.

Plaintiff argues that this case is controlled by *McCormick* and that, because there is no question that he suffered some injury to his shoulder and that this injury affected his ability to lead his normal life, he was entitled to a directed verdict. We disagree. In this case, it is undisputed that, as a result of the accident, plaintiff suffered a shoulder injury that resulted in him undergoing surgery and physical therapy. Dr. Suleiman diagnosed plaintiff with a labral tear and a bruised or injured AC joint, and Dr. Suleiman performed surgery on plaintiff on December 9, 2014. He cleaned up the inflammation at the AC joint, removed the bone chips, and repaired the shoulder with the use of anchors. Contrary to defendants' assertion, Dr. Kohen did not say that plaintiff suffered no injury. Although Dr. Kohen did not believe that plaintiff had a SLAP tear, he testified that, as a result of the accident, plaintiff had a Grade 1 AC separation. Dr. Lennox testified that plaintiff had joint bruising and that a SLAP tear was possible. Given this evidence, there is no question of fact that plaintiff had an objectively manifested impairment of an important body function. Plaintiff had at least some type of injury to his shoulder that was observable by MRI and actual symptoms that someone else would perceive as impairing body functions, such as being able to lift his arm and lifting weight. See *McCormick*, 487 Mich at 218. In addition, the impaired functions were important to plaintiff because being unable to lift his arm and weight were of consequence to his ability to work and engage in athletic activities. See *id*. The principal question is whether, as plaintiff argues, he established as a matter of law that this impairment affected his general ability to lead his normal life.

-4-

After the surgery, plaintiff was restricted from lifting, pushing, or pulling objects, and lifting his arm too far above his shoulder for six weeks. He was prescribed physical therapy for approximately 6 to 10 weeks, but actually underwent physical therapy for approximately 12 months. He was also restricted from work until September 2015. Although plaintiff did not regularly attend physical therapy, which delayed his recovery, there was no dispute that it would have taken him approximately three months to recover, even had he attended physical therapy as prescribed. Under *McCormick*, 487 Mich at 203, there is no express temporal requirement regarding how long the impairment must last and no requirement of permanency in order to meet the serious impairment threshold. In this case, plaintiff's impairment affected his ability to lead his normal life from at least December 2014, when the surgery occurred, until March 2015, when he would most likely have been fully recovered had he attended physical therapy as prescribed.

Nonetheless, plaintiff's claim was not limited to the timeframe preceding the end of his physical therapy. Rather, plaintiff claimed that the suffered residual and permanent impairments to his shoulder and sought compensation for those impairments. The residual-impairments issue was highly contested at trial. On the basis of plaintiff's most recent MRI, Dr. Singh recommended additional physical therapy; Dr. Kohen, however, did not see any arthritic change or impingement on plaintiff's most recent MRI. Moreover, plaintiff complained of continued pain and limitations, including at the time of trial, but was able to return to his pre-accident activities in September 2015 and was also observed carrying heavy items about that time. This Court has concluded that, when a factual issue exists regarding the nature and the extent of an injury, particularly regarding whether objectively manifested abnormalities continued to be impairments, a directed verdict is improper and the claim should be submitted to the jury. *Chouman*, 293 Mich App at 444. See also *McCormick*, 487 Mich at 216-217 (noting that a directed verdict was proper, *inter alia*, because there was no dispute regarding residual injuries).

Therefore, because questions remained regarding the extent and duration of plaintiff's injuries and the impact, if any, those injuries continued to have on plaintiff's life, the trial court properly denied plaintiff's motion for a directed verdict and properly submitted the claim to the jury.

## B. IMPROPER ARGUMENTS

Next, plaintiff argues that he was denied a fair trial because defense counsel made improper arguments during the trial. "When reviewing asserted improper comments by an attorney, we first determine whether the attorney's action was error and, if it was, whether the error requires reversal." *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996). "An attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial." *Id.* "Reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved." *Id*.

Plaintiff argues that defense counsel erred by arguing that plaintiff was required to prove a permanent injury to recover. Plaintiff alleges that the following statements and arguments made by defense counsel in his opening statement and closing argument to the jury were improper:

- "This is not a case about severe permanent disabling injuries that are worth millions of dollars."

- "On August 20, 2015[,] the Plaintiff filed their lawsuit claiming that Mr. Ybarra had severe permanent injuries."

- "[Dr. Lennox found] [n]o severe permanent injuries as alleged in the lawsuit that this trial is about."

- "This is not a person, the Defendants take the position this is not a person with severe permanent injuries."

- "It was then on August 20, 2015[,] that plaintiff filed this lawsuit claiming severe permanent injuries. If you notice the surveillance videos after he filed this lawsuit, when he sued my client we wanted to see if he in fact had severe permanent injuries when the medical records reflected that he's supposed to [be] fully recovered."

- "There's a huge gaping hole in Plaintiff's case, and the Plaintiff's counsel didn't talk with you about it on closing, and that is that Plaintiff failed to prove that he has a permanent injury. Remember there's a burden of proof, and you're going get instructed again on it by the Judge, they have to come to court and prove to you that [plaintiff] has a severe permanent disabling shoulder injury that entitles him to what was it, $10,000 a year for the next 50 years."

Plaintiff is correct that a party is not required to prove permanent injuries to recover in third-party no-fault. See supra issue II-A. Plaintiff overlooks, however, that he claimed and sought compensation for permanent injuries in his complaint. Moreover, in his opening statement to the jury, plaintiff's counsel argued that "[plaintiff's] got a permanent problem." In closing, plaintiff's counsel similarly argued, "The Court will advise you that a serious impairment doesn't have to be permanent, but in this case obviously it is."

Defense counsel did not argue that the no-fault act required plaintiff to prove a permanent injury. Rather, defense counsel's arguments merely disputed plaintiff's *assertion* of permanent injuries, upon which plaintiff based his complaint. In context, defense counsel accurately argued that plaintiff was required to prove a permanent injury to receive the damages he sought in his complaint. In any event, the trial court properly instructed the jury in both its preliminary and final instructions that "[a]n impairment does not have to be permanent in order for it to be a serious impairment of body function." See *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.") (internal citations and quotation marks omitted). Accordingly, plaintiff's claim is without merit.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher