*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEON L. SMITH,

        Plaintiff-Appellee,

v

PATSY BUERKEL,

        Defendant-Appellant.

UNPUBLISHED
April 29, 2021

Nos. 349874; 350274
Oakland Circuit Court
LC No. 2017-156875-NI

Before: O'BRIEN, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 349876 of these consolidated appeals,[1] defendant appeals by right the judgment entered in favor of plaintiff after a jury trial. In Docket No. 350274, defendant appeals by right the trial court's order granting case evaluation sanctions in favor of plaintiff. We affirm in both dockets.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In March 2014, plaintiff's motor vehicle was struck from behind by defendant's vehicle. Plaintiff was stopped at an intersection on Main Street in Royal Oak at the time, and the impact pushed plaintiff's vehicle into the vehicle ahead of him. Royal Oak Police Officer Gerald Carr responded to the accident scene. Defendant's vehicle was significantly damaged, was not drivable, and had to be towed from the scene. Defendant was the only at-fault driver. Plaintiff's vehicle sustained less damage than defendant's vehicle and plaintiff was able to drive it away. Officer Carr did not observe that plaintiff had sustained any injuries. Plaintiff declined medical treatment at the scene.

Later that evening, plaintiff experienced back pain, neck soreness, and headaches, and went to the emergency room (ER) at Beaumont Hospital in Grosse Pointe. At the hospital, an ER

---

[1] See *Smith v Buerkel*, unpublished order of the Court of Appeals, entered August 28, 2019 (Docket Nos. 349876, 350274).

physician, Dr. Rickey Courtney, performed a physical examination and a CAT scan of plaintiff's head and cervical spine, which revealed "[n]o fractures or malalignment or destructive lesions." Dr. Courtney noted that plaintiff did have preexisting "mild age-appropriate degenerative disc disease." Dr. Courtney also ordered a chest x-ray and concluded that there was "no evidence of an acute traumatic process secondary to" the accident and that plaintiff's symptoms were the result of "[a] motor vehicle accident and cervical strain." Plaintiff was given a neck brace, medication, and advised to follow up with his primary care physician (PCP).

In April 2014, plaintiff went to his PCP, Dr. Leon Morris, because of back pain, neck pain, soreness, and headaches. Dr. Morris gave plaintiff pain medication and referred him for physical therapy. After plaintiff was discharged from physical therapy in May 2014, Dr. Morris referred plaintiff to a physical medicine and rehabilitation physician, Dr. Craig Whitmore. Plaintiff first saw Dr. Whitmore in June 2014, primarily complaining of back pain. Dr. Whitmore diagnosed plaintiff "with sacroiliitis, which is a pain in the back related to the sacral region[.]" Dr. Whitmore's diagnosis was based on his physical examination of plaintiff; Dr. Whitmore stated at his deposition that plaintiff's joints were tender when he pushed on them, and that plaintiff experienced pain during a FABER test.[2] Dr. Whitmore prescribed plaintiff a numbing patch, anti-inflammatory medication, and pain medication. Dr. Whitmore also referred plaintiff for physical therapy and instructed him to refrain from his work as a corrections officer and from household chores.

In July 2014, plaintiff returned to Dr. Whitmore, complaining of back pain. Dr. Whitmore ordered an MRI and reviewed plaintiff's previous x-ray, which did not reveal a herniated disc and appeared normal. However, Dr. Whitmore also noted that sacroiliitis would not usually appear on a MRI. Dr. Whitmore prescribed different pain medication and recommended that plaintiff continue physical therapy. In September 2014, plaintiff again returned to Dr. Whitmore, complaining of back pain but indicating that it "was much improved at that time[.]" Dr. Whitmore continued plaintiff's disabled employment status because of the reinjury risks as a corrections officer. In December 2014, plaintiff stopped seeing Dr. Whitmore and was told he could return to work.

In January 2017, Plaintiff filed suit against defendant, alleging that defendant had carelessly and recklessly driven her vehicle, resulting in the accident that caused significant injury to plaintiff. Defendant answered and asserted several affirmative defenses, including that any injury suffered by plaintiff existed before the accident.

A jury trial was held in July 2019. Plaintiff presented three lay witnesses—Officer Carr, defendant, and plaintiff—and one expert witness, Dr. Whitmore. Plaintiff testified that, as a result of the accident, he has been unable to operate his small lawn care business, help with his family, train or walk his dogs, exercise and lift weights, play with his sons, dance, and lay on his back. Plaintiff was also unable to work as a corrections officer for about six months after the accident.

---

[2] Dr. Whitmore testified that a FABER test involves having a patient cross his leg. "[W]hen you cross your leg, it takes that pelvis and it tilts it a bit and it can cause—if the joint is inflamed, it will cause some discomfort. In [plaintiff's] case[,] it caused [pain] just on the left when I did that particular maneuver on the left."

Plaintiff testified that he continues to have variable back pain and has continued treatment with Dr. Morris.

After the close of plaintiff's proofs, both plaintiff and defendant moved for a directed verdict. The trial court initially granted plaintiff's motion as to the issues of serious impairment of body function and causation, but later reconsidered that ruling because a directed verdict motion by a plaintiff can only be brought, under MCR 2.516, after the close of the defendant's proofs.[3] Before the defense presented its case, plaintiff moved to limit defendant's sole witness, Dr. Courtney, from testifying as an expert, arguing that, as an ER physician, Dr. Courtney was not an expert with respect to plaintiff's back injury. Defendant argued that Dr. Courtney should be permitted to testify as an expert in his field. The trial court held that Dr. Courtney's testimony would be limited to a "treater's testimony[,]" i.e., what he observed and the treatment given, stating "I'm not allowing the expert testimony [in] part 'cause [sic] he wasn't listed as an expert."

Defendant then presented Dr. Courtney as her sole witness, by way of video deposition testimony. Because of the limitations placed on Courtney's testimony, the video was redacted to exclude any expert opinion testimony. Defendant then rested, and plaintiff and defendant both renewed their motions for directed verdict with respect to the issues of serious impairment and causation. Plaintiff reasserted that plaintiff and Dr. Whitmore had testified that his back injury was a result of the accident, which defendant admitted was her fault, and that it had impacted plaintiff's ability to participate in his normal life and activities. Plaintiff also argued that defendant had failed to call any of the 59 experts on her witness list and, instead waited until the last minute to call Dr. Courtney, who was not listed as a potential expert witness. Defendant argued that Dr. Courtney's testimony created a question of fact and a credibility issue because there were no objective findings that plaintiff had sustained an injury resulting from the accident, and that a directed verdict in favor of plaintiff would therefore be inappropriate.

The trial court granted plaintiff's motion for directed verdict with respect to serious impairment and causation, stating:

> [I]n terms of this serious impairment and affecting the ability to lead a normal life, I have his treating doctor who disabled him for six months from work. I have the [p]laintiff's testimony that . . . [h]e was unable to do his daily activities . . . . I don't have any evidence to controvert the [p]laintiff's evidence in terms of the treating physician's testimony and the [p]laintiff's testimony in terms of [p]laintiff's ability to lead his normal life. So therefore, I do find that [p]laintiff has met his burden in proving serious impairment of body function that affected his ability to lead a normal life. And I'm granting [p]laintiff's directed verdict motion as it pertains to that issue.

> As it pertains to causation, on the [p]laintiff's side I have the treater, [Whitmore], who within a reasonable degree of medical certainty related the

---

[3] The trial court granted defendant's motion for a directed verdict "as to plaintiff's injuries to his neck and headaches[,]" finding that there was no evidence that plaintiff's headaches and neck pain affected his daily activities or ability to lead a normal life.

sacroiliitis to the car accident. After being presented with a car accident subsequent to this car accident, he said that it's possible he could have been injured doing something else. But it did not change his original opinion that within a reasonable degree of medical certainty, this sacroiliitis injury was a result of this car accident. As to the defense side, all I have is this ER physician[, Courtney,] who doesn't deny that he has this injury. Doesn't deny that this injury is related to the car accident. He really had nothing to say about it. . . . [Courtney] said he treats emergent situations. As long as someone's stable to go home, he refers them to the PCP, which is what he did in this case. So[,] I do not have any evidence by way of [Courtney] to create a question of fact as to causation. So therefore, I'm granting [p]laintiff's directed verdict motion as to causation as well.

The case was therefore submitted to the jury solely to determine whether to award (and, if so, the amount of) damages. The jury awarded plaintiff $100,000 for past noneconomic damages. The trial court subsequently entered a judgment in the amount of $100,000 in favor of plaintiff.

After the judgment was entered, plaintiff moved for case evaluation sanctions under MCR 2.403(O)(6), arguing that defendant had rejected a case evaluation award of $35,000 and that plaintiff had obtained a more favorable award at trial, i.e., $100,000, which entitled plaintiff to case evaluation sanctions. In response, defendant argued that plaintiff's case evaluation sanctions included unreasonable attorney's fees. The trial court granted plaintiff's motion for case evaluation sanctions and entered an order awarding plaintiff $40,803.67 in costs and attorney's fees.

These appeals followed.

## II. DIRECTED VERDICT

Defendant argues that the trial court erred by granting plaintiff's motion for a directed verdict on the issues of serious impairment of body function and causation. We disagree. "This Court reviews de novo a trial court's ruling on a motion for directed verdict." *Barnes v 21st Century Premier Ins Co*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 347120), slip op at 8. "A motion for directed verdict challenges the sufficiency of the evidence." *Id*. "A directed verdict is only appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). "With respect to a motion for directed verdict, [a]n appellate court recognizes the jury's and the judge's unique opportunity to observe the witnesses, as well as the factfinder's responsibility to determine the credibility and weight of trial testimony." *Id*. (quotation marks and citation omitted).

In addition, "[t]he decision whether to allow a party to add an expert witness is within the discretion of the trial court." *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991). We review for an abuse of discretion a trial court's rulings concerning the qualifications of proposed expert witnesses. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). "Whether to impose discovery sanctions is entrusted to the discretion of the trial court." *Local Area Watch v Grand Rapids*, 262 Mich App 136, 147; 683 NW2d 745 (2004). As a result, the imposition of "[d]iscovery sanctions [is] reviewed for an abuse of discretion." *Dean v Tucker*, 182

Mich App 27, 32; 451 NW2d 571 (1990). A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

We review de novo as a question of law a trial court's decision whether to grant case evaluation sanctions under MCR 2.403(O). *Peterson v Fertel*, 283 Mich App 232, 235; 770 NW2d 47 (2009). We review de novo the interpretation and application of statutes and court rules. *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005).

## A. SERIOUS IMPAIRMENT

Defendant argues that the trial court erred by granting a directed verdict in plaintiff's favor on the issue of whether plaintiff had suffered a serious impairment of body function. We disagree.

"Tort liability is limited under the Michigan no-fault insurance act." *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). Under MCL 500.3135(1), a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). "A 'serious impairment of body function' is defined by MCL 500.3135[(5)] as 'an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.' " *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011), citing MCL 500.3135(5). "Whether a plaintiff has suffered a serious impairment of body function is a threshold question that the trial court should decide as a matter of law unless there is a material factual dispute regarding the nature and extent of the person's injuries . . . ." *Chouman*, 293 Mich App at 441 (quotation marks and citation omitted).

"Whether someone has suffered a serious impairment is inherently fact-and circumstance-specific and [the analysis] must be conducted on a case-by-case basis." *Id*. (quotation marks and citation omitted). "Therefore, the evidence must establish (1) an objectively manifested impairment of a body function, (2) that is significant or important to the specific injured person, and (3) that affects that specific person's general ability to lead his or her particular normal life." *Id*. "However, there is no bright-line rule or checklist to follow in making that evaluation." *Id*. An objectively manifested impairment is one "that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick v Carrier*, 487 Mich 180, 196; 795 NW2d 517 (2010). While mere subjective complaints of pain and suffering are insufficient to establish an impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested. *Id*. at 198. The second requirement for a serious impairment is "an inherently subjective" one. *Id*. at 199. The focus is on whether the body function "has great value, significance, or consequence," and the relationship of that function to the person's life must be considered. *Id*. Lastly, the impairment affects the person's ability to lead a normal life if it has "an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. at 202. This is also a subjective inquiry, and does not require a "quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 202-203.

The trial court held that the evidence did not establish a material factual dispute regarding the nature and extent of plaintiff's injury. We agree. The evidence produced at trial from plaintiff, Dr. Courtney, and Dr. Whitmore revealed that plaintiff sought treatment for back pain, neck pain, and headaches on the day of the accident. Plaintiff's injury was diagnosed as sacroiliitis and required continued treatment through December 2014, which included multiple rounds of physical therapy, leave from work, restrictions on performing household chores, and pain medication. Plaintiff testified, and this testimony was not refuted, that his ability to work, exercise, walk his dogs, play with his children, care for family members, dance, lay on his back, and participate in activities as he did before the accident was substantially impaired from the date of the accident until approximately December 2014 as a consequence of his injury. Although defendant argued that plaintiff's back injury may have been caused by a preexisting degenerative disc condition or subsequent motor vehicle accident, no evidence was produced at trial to support those allegations. While Dr. Courtney's records did indicate the presence of a degenerative disc condition, Dr. Courtney described this condition as both "mild" and "age-appropriate" and concluded that plaintiff's symptoms had been caused by a motor vehicle accident. Defendant presented no expert testimony to support its theory that plaintiff's back injury had another cause, but presented merely speculation. Nor did defendant present testimony or other evidence to refute the evidence regarding the extent of plaintiff's injury.

On this basis, we agree with the trial court that there was no material factual dispute regarding the nature and extent of plaintiff's injury. *Chouman*, 293 Mich App at 441. Plaintiff's evidence included the fact that plaintiff's PCP and Dr. Whitmore recommended over six months of physical therapy, plaintiff's inability to work or participate in other pre-accident activities for over six months, and plaintiff's residual back pain. Again, there is no temporal requirement regarding how long the impairment must last and no requirement of permanency to meet the serious impairment threshold. *McCormick*, 487 Mich at 203. Plaintiff's impaired ability to lead his normal life from March 2014, when the accident occurred, until December 2014, when he was discharged from physical therapy and cleared to return to work, satisfied the definition of a serious impairment of body function. Accordingly, the trial court did not err by granting a directed verdict in favor of plaintiff on this issue. *Barnes*, ___ Mich App at ___, slip op at 8.

## B. CAUSATION

Defendant also argues that the trial court erred by granting a directed verdict in plaintiff's favor on the issue of causation. We disagree.

The causation element of a negligence claim requires a plaintiff to prove both "cause in fact and legal (or proximate) cause." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). Cause in fact requires that the harmful result would not have come about "but for" the negligent conduct. *Haliw*, 464 Mich at 310. Cause in fact may be established by circumstantial evidence, but such proof must be subject to reasonable inferences and not mere speculation. *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994). Evidence of causation is sufficient if the fact-finder may conclude that, more likely than not, the plaintiff's injuries would not have occurred but for the defendant's conduct, even if other plausible theories have evidentiary support. *Wilson v Alpena Co Rd Comm*, 263 Mich App 141, 150; 687 NW2d 380 (2004). Legal (or proximate) cause "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Craig*, 471 Mich

at 86-87. "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997). There may be more than one legal cause of an injury. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). When the negligence of multiple actors contributes to producing a single injury, one actor's negligence can still be a legal cause if it was a substantial factor in bringing about the injury. *Brisboy v Fibreboard Corp*, 429 Mich 540, 547-548; 418 NW2d 650 (1988).

Defendant argues that the trial court erred by striking portions of Dr. Courtney's testimony insofar as it related to his expert testimony, and that this testimony would have established a disputed issue of fact regarding causation.[4] We disagree that the trial court erred by limiting Dr. Courtney's testimony. A trial court may preclude a party from introducing expert witnesses as a sanction for failing to follow discovery orders. MCR 2.313(B)(2)(b). "Witness lists are an element of discovery" and are imposed to avoid "trial by surprise." *Grubor Enterprises, Inc v Krotidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993) (quotation marks and citation omitted). Under MCR 2.401(I)(1), the trial court sets the time period for submitting witness lists and for disclosing whether any witness is an expert. MCR 2.401(I)(1). When a witness is "not listed in accordance with this rule[,]" the trial court may prohibit the witness from testifying at trial except upon good cause shown. MCR 2.401(I)(2). In considering whether a witness not properly named on a witness list should be allowed to testify, the trial court should consider the following non-exhaustive list of factors:

> (1) whether the violation was wilful [sic] or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the [plaintiff]; (4) actual notice to the [plaintiff] of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of [defendant] engaging in deliberate delay; (6) the degree of compliance by the [defendant] with other provisions of the court's order; (7) an attempt by the [movant] to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice. [*Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010) (citation omitted).]

The trial court's decision to limit Dr. Courtney's testimony was within its discretion. In September 2017, defendant submitted her witness list; it included 59 expert witnesses, but did not identify Dr. Courtney as an expert witness (or even as a lay witness, except as potentially covered under the general category of "[a]ll treating and examining physicians"). Given the nature of plaintiff's claim and defendant's argument, the need for expert testimony to rebut plaintiff's evidence should have been obvious to defendant. However, despite the 59 expert witnesses identified on defendant's witness list—including four experts, one of whom was Dr. Whitmore, who are physical medicine and rehabilitation physicians—defendant chose instead to attempt to present a undisclosed expert as its sole expert witness at trial.

---

[4] Defendant challenges the limitations placed on Dr. Courtney's testimony only with respect to the issue of causation.

While defendant concedes that she failed to explicitly include or designate Dr. Courtney as an expert on her witness list, she argues that plaintiff was not surprised or prejudiced by defendant's decision to present Dr. Courtney's expert testimony because plaintiff was put on notice of the possibility at Dr. Courtney's deposition. Specifically, at Dr. Courtney's May 2019 deposition, plaintiff made no objection to defendant's request to qualify Dr. Courtney as an expert:

*Defendant's Counsel*: All right. Defendant also moves for the admission of Dr. Rickey Lavell Courtney as an expert in the field of family medicine.

*Plaintiff's Counsel*: No objection.

It is important to note that what plaintiff did not object to was Dr. Courtney testifying as an expert in the field of *family medicine*, as opposed to his testifying as an expert in physical medicine and rehabilitation. In other words, plaintiff was not necessarily on notice that defendant intended for Dr. Courtney to testify as an expert in sacroiliitis or as a causation witness. And if defendant was contemplating having Dr. Courtney testify as an expert witness in May (at the time of the deposition), she has not established good cause for her failure to amend her witness list or to otherwise notify plaintiff and the trial court of her intent at any point in time before the trial commenced in July. Defendant also had ample opportunity between September 2017 and the July 2019 trial to depose (and thereby to secure the trial testimony of) any of the 59 experts identified on her witness list. In light of the above facts, we conclude that the trial court did not abuse its discretion by limiting Dr. Courtney's testimony. *Duray*, 288 Mich App at 164.

In any event, it is unlikely that the trial court's decision to limit Dr. Courtney's testimony was outcome-determinative, because it is apparent from the record that the trial court would have granted plaintiff's motion for a directed verdict on the issue of causation even if it had denied plaintiff's motion to limit Dr. Courtney's testimony. The record shows that the trial court, in deciding the cross-motions for directed verdict, essentially considered Dr. Courtney's testimony in its entirety and concluded that defendant had failed to establish a genuine issue of material fact with respect to causation. Specifically, the trial court stated:

[A]ll I have is this ER physician who doesn't deny that [plaintiff] has this injury. Doesn't deny that this injury is related to the car accident. He really had nothing to say about it.

We conclude that the trial court was correct in ruling that defendant failed to establish a material disputed issue of fact with respect to causation. It was undisputed that defendant struck plaintiff's vehicle on the day of the accident and that, as a result, plaintiff went to the ER that evening, complaining of back pain, neck pain, and headaches. In fact, defendant admitted at trial that she did not see plaintiff stopped for traffic and was unable to stop her vehicle in time to avoid the collision. At the ER, Dr. Courtney categorized plaintiff's symptoms as a cervical strain from a motor vehicle accident. Dr. Whitmore, a physical medicine and rehabilitation specialist, diagnosed plaintiff with sacroiliitis from his objective findings and physical examination of plaintiff. Dr. Courtney admitted that he performed no tests such as the FABER test to determine the extent of plaintiff's injury, and testified further that his focus as an ER physician was on conditions that required emergency treatment, with stable patients being sent home to follow up

with their PCP or other medical providers. Additionally, both physicians agreed that plaintiff's condition would not typically be evident from an MRI image.

Further, defendant's argument that plaintiff's back injury may have been caused by a preexisting back injury or subsequent motor vehicle accident is largely unsupported. Dr. Whitmore stated that plaintiff's back pain from sacroiliitis was different from the occasional back pain he had reported before the accident because "[m]uscle pain could be a strain, which could be acute and go away quickly . . . [while] [t]he sacral joint is a lot different." Additionally, while plaintiff admitted in his deposition that he had been involved in a subsequent motor vehicle accident, he stated that he was not injured in that accident, and no evidence of any injury or exacerbation of existing injuries from that second accident was presented. See *Brisboy*, 429 Mich at 547-548. Because the evidence presented at trial did not establish a material dispute on the issue of causation, the trial court did not err by granting a directed verdict in plaintiff's favor on that issue. *Barnes*, ___ Mich App at ___, slip op at 8.

### III.  CASE EVALUATION SANCTIONS

Defendant also argues that the trial court erred by granting case evaluation sanctions to plaintiff. We disagree.

Each party to a case evaluation must file an acceptance or a rejection of the evaluation within 28 days after service of the evaluation. MCR 2.403(L)(1). "The failure to file a written acceptance or a rejection within 28 days constitutes a rejection." *Id*. Under MCR 2.403(O)(1), "[i]f a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." MCR 2.403(O)(1). A verdict is "more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation." MCR 2.403(O)(3). A verdict for case evaluation purposes includes a jury verdict, a judgment by the court after a nonjury trial, and a judgment entered as a result of a ruling on a motion after rejection of the evaluation. MCR 2.403(O)(2)(c); *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 298 Mich App 558, 561; 828 NW2d 94 (2012).

The record shows that the parties participated in a case evaluation, resulting in a $35,000 award to plaintiff, which both plaintiff and defendant rejected. The jury awarded plaintiff $100,000 for past noneconomic damages. Because plaintiff was awarded an amount over $38,500, plaintiff did achieve a more favorable verdict than the rejected case evaluation award. Defendant's argument presumes that the court erred by granting plaintiff's motion for a directed verdict. Because we find no error in the trial court's grant of a directed verdict, the trial court's order granting case evaluation sanctions was also not in error.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra